UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR EDWARD EZOR,<br><br>    Plaintiff,<br><br>    v.<br><br>JACKIE LACEY, et al.,<br><br>    Defendants. | NO. CV 19-4020-JVS (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the complaint, records on file, the Report and Recommendation of the United States Magistrate Judge ("Report") and the Objections. Further, the Court has engaged in a *de novo* review of those portions of the Report to which the parties have objected. The Court accepts the Report's findings and recommendations except as set forth below.

Plaintiff argues that the Report is void because the magistrate judge is disqualified from this case. The Report states that Plaintiff's three requests for recusal have been denied in orders dated August 15, 2019, December 5, 2019, and January 7, 2020.[1] (Report at 10 n.5; Orders, Dkt. Nos. 26, 37, 45.) Plaintiff's objection is overruled.

According to the online docket in the underlying criminal case in Los Angeles

---

[1] Plaintiff repeats his claim that he is suing both the district judge and magistrate judge. Plaintiff does not identify any such litigation by case name or case number. Plaintiff's argument was addressed in the orders denying recusal. (Dkt. Nos. 37, 45.)

County Superior Court Case No. BA441505, Plaintiff pled nolo contendere on September 12, 2019 and a probation and sentence hearing is set on September 7, 2021.

Defendants object to the Report's recommendation that the claims for monetary relief against the DA Defendants in their individual capacity be stayed pursuant to the *Younger* doctrine pending the conclusion of the underlying criminal case.

First, Defendants contend that the Report erred in failing to apply the *Rooker Feldman* doctrine. The Report declined to apply the *Rooker Feldman* doctrine because there is no final judgment in the underlying criminal case and concluded that it could not apply collateral estoppel to Plaintiff's claims absent a more complete record and entry of judgment. (Report at 7-8 n.4, 9.) Defendants rely primarily on *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026 (9th Cir. 2001).

The *Rooker Feldman* doctrine provides that a district court lacks jurisdiction over claims that constitute a *de facto* appeal from a state court's interlocutory order or judgment. *Id.* at 1030 (when federal court "must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined"). In the underlying criminal case, Plaintiff filed a petition for writ of mandate from the trial court's order denying his motion to dismiss the criminal charges and his alternative motion to disqualify the Los Angeles County District Attorney's Office ("D.A.'s Office"). (Dkt. No. 54-1 at 25.) According to the petition, Plaintiff discovered that his entire attorney-client file, previously in the possession of his prior counsel, had been given to the D.A.'s Office without his knowledge or permission. At a subsequent hearing on February 6, 2019, Defendant Howick admitted that the D.A.'s Office had the attorney-client file for over a month and that a paralegal had looked through it. (*Id.* at 27-28.) Plaintiff argued that the attorney-client file contained privileged documents such as a trial strategy memo. At a February 14, 2019 hearing, Plaintiff's prior counsel reviewed the file and stated that it

contained privileged documents but that some documents were missing from the file. (*Id.* at 28-29.) Plaintiff requested dismissal based on prosecutorial misconduct and violation of his constitutional rights. At a March 18, 2019 hearing, Judge Veals denied the motion. (*Id.* at 25, 29-30.) The California Court of Appeal denied the writ. "Petitioner fails to demonstrate the respondent court abused i[ts] discretion in denying his motion to dismiss and/or disqualify the District Attorney's Office." (*Id.* at 39-40.) The California Supreme Court denied the petition for review and application for stay. (*Id.* at 70.)

To the extent Plaintiff seeks an order declaring Judge Veals' interlocutory order void or dismissing the criminal charges, his claim would be barred by the *Rooker Feldman* doctrine.[2] Here, however, Plaintiff also seeks declaratory relief that his constitutional rights have been violated, and seeks damages and punitive damages for the constitutional violations. The Report concluded that the record does not contain sufficient information to determine whether the *Rooker Feldman* doctrine or collateral estoppel doctrine would bar the claim. The trial court's order and the basis for it is not in the record before the court. It is therefore unknown whether the trial court ruled on the existence of a constitutional violation. It is unknown whether Plaintiff may raise the issue on appeal from any conviction or sentence. Defendants' objections do not cure this deficiency.

Second, Defendants contend that absolute prosecutorial immunity bars Plaintiff's claims. A previous Report and Recommendation issued on September 17, 2019 and accepted by this Court, addressed the legal standards governing prosecutorial immunity. (Dkt. No. 27, 31.) Prosecutors are absolutely immune from

---

[2] To the extent Plaintiff alleges that the constitutional violation forced him to enter a plea of nolo contendere, such a claim could well be barred after entry of the state criminal judgment by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Martin v. City of Boise*, 920 F.3d 584, 613 (9th Cir. 2019). Because no party contends that judgment has been entered, the court does not reach the *Heck* issue.

claims for monetary relief for conduct integral to the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 428 n.27, 430-31 & n.34 (1976) (applying prosecutorial immunity "in initiating a prosecution and in presenting the State's case" even after plaintiff obtained habeas relief from underlying criminal conviction). "If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights." *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003). Absolute immunity encompasses allegations that the prosecution deliberately withheld or suppressed exculpatory information, or knowingly used false testimony at trial. *Imbler*, 424 U.S. at 430-31 & n.34; *Broam*, 320 F.3d at 1030 (applying absolute immunity to allegations prosecutor failed to preserve or turn over exculpatory material before, during or after trial). Absolute immunity extends to appearances in court and making allegedly false or defamatory statements that "deliberately misled" the court. *Burns v. Reed*, 500 U.S. 478, 487-88, 489-90, 492 (1991) (applying prosecutorial immunity to pretrial court appearances in criminal case). Prosecutorial immunity extends to the issuance of a subpoena to gather evidence in preparation for a trial. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 844 & n.5 (9th Cir. 2016).

The Supreme Court has held that prosecutorial immunity extends to claims that the district attorney failed to train or supervise prosecutors properly, or failed to establish an information system to enable compliance with *Brady* obligations. *Van De Kamp v. Goldstein*, 555 U.S. 335, 344, 348-49 (2009); *Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009). Such claims are directly connected to the conduct of a trial and require proof of an individual prosecutor's error in a specific criminal trial. *Goldstein*, 555 U.S. at 348-49. Supervisory prosecutors are "immune in a suit directly attacking their actions related to an individual trial" and in general methods of supervision and training. *Id.* at 346.

Accordingly, the allegations regarding the prosecutor's misrepresentations to the court and *Brady* violations, and the related allegations against Lacey, challenge

4

conduct that is intimately associated with the judicial phase of the criminal process and the claims are barred by prosecutorial immunity.

The First Amended Complaint alleges that the Defendants had improper access to his privileged information critical to his defense of the underlying criminal case, and possibly removed some of those documents, without Plaintiff's knowledge or consent. (FAC ¶¶ 4, 11, 15(iv).) Like the initial complaint, the First Amended Complaint does not allege the dates or circumstances under which the prosecution obtained access to the privileged information. This Court accepted the Report's recommendation and dismissed this claim with leave to amend. After describing the legal standards governing prosecutorial immunity and a Sixth Amendment violation, the Report had warned Plaintiff that the claim was too conclusory to state a claim for relief and did not allege facts regarding when or at what stage the alleged access to privileged information occurred. (Report at 8-11, Dkt. No. 27.) The First Amended Complaint does not cure any of these defects. Moreover, as discussed above, Plaintiff's filings in state court indicate that his former defense counsel left the attorney-client file at the D.A.'s Office in December 2018 "for the purpose of the District Attorney's Office redacting certain discovery documents and writings" as "ordered by a Superior Court judge at an earlier hearing."[3] (Dkt. No. 54-1 at 46-47.) The D.A.'s Office did not notify Plaintiff that it had retained the file after defense counsel was relieved and Plaintiff began to represent himself. Plaintiff discovered from former defense counsel that he had given it to the D.A.'s Office. (*Id.* at 47-48.)

Accordingly, Plaintiff challenges conduct integral to the judicial phase of the criminal process, and it is evident that Plaintiff cannot cure the defects by amendment.[4] *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) (affirming

---

[3] Plaintiff complains that his counsel should have simply provided the documents ordered by the court rather than leave the entire file. (Dkt. No. 52-1 at 47.)

[4] The allegation of a retaliatory prosecution does not avoid this result. A prosecutor's intent in performing prosecutorial acts "plays no role in the immunity

denial of leave to amend when amendment would be futile); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (district court's discretion to deny leave to amend is "particularly broad" when plaintiff has previously received leave to amend).

    IT IS ORDERED that:

1. Defendant Judge Veals' motion to strike is GRANTED as follows: All claims against Judge Veals are dismissed with prejudice or, alternatively, stricken from the First Amended Complaint. (Dkt. No. 56.)
2. Defendants Lacey and Howick's motion to dismiss the First Amended Complaint is GRANTED without leave to amend. (Dkt. No. 54.)
3. This entire action is dismissed without leave to amend.

DATED: March 12, 2021

                                                           JAMES V. SELNA
                                                       United States District Judge

---

inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("Intent should play no role in the immunity analysis."; noting "allegations of bad faith, personal interest or outright malevolence" are insufficient); *see also Reichle v. Howards*, 566 U.S. 658, 668 (2012) (noting prosecutor is not proper defendant in retaliatory prosecution case "because prosecutors enjoy absolute immunity for their decisions to prosecute").